KOURY *v.* KOURY.

5-1818                                    323 S. W. 2d 554

Opinion delivered May 4, 1959.

*James M. Rowan, Jr.* and *L. B. Smead,* for appellant.

*Lester E. Dole, Jr.,* for appellee.

SAM ROBINSON, Associate Justice. Appellant, George Koury, and appellee, Victoria Elizabeth Koury, were married in 1948 and separated April 20, 1957, at which time Mrs. Koury left Mr. Koury by moving from their home in Camden. On January 23, 1958, Mrs. Koury filed this suit for divorce, alleging indignities as a ground

therefor. Mr. Koury denied the allegation of the complaint stating a cause of action, and filed a cross-complaint asking that he be granted a divorce on the ground of desertion. The chancellor granted a divorce to Mrs. Koury, and Mr. Koury has appealed. Of course, if Mrs. Koury left the home because of indignities inflicted by Mr. Koury, she is not guilty of desertion. *Lambert* v. *Lambert*, 229 Ark. 533, 316 S. W. 2d 822.

According to Mrs. Koury, and her testimony has the ring of truth, she was grossly mistreated by Mr. Koury. When the parties married each other, they were near middle age, both having been married previously, and Mrs. Koury had some finances of her own. Although it does not appear that Mr. Koury had much cash money, he had some property with a potentiality of producing oil. In 1956, largely through the use of money advanced by Mrs. Koury to finance operations, good oil production was obtained on Mr. Koury's property, and at the time of the separation he had an income of around $5,000 a month. It appears that after Mr. Koury began receiving such a large monthly income he thought he had no further need for Mrs. Koury. According to Mrs. Koury's testimony, he complained all the time and criticized almost everything she did, telling her that she had no sense and was not reared properly. We gather from the record that Mrs. Koury is a lady with keen sensibilities. Undoubtedly Koury treated her with indignities such as to render her condition in life intolerable. The record supports a finding that he required her to keep books on every penny that was spent; he stood near the telephone when she was talking to friends, and criticized her conversation — this occurred regularly. When she purchased groceries, he checked every item and if everything did not balance he severely criticized her. On one occasion he threatened to slap her because a can of tomatoes had been left off the grocery list. He even complained of such items as chewing gum and paper napkins, and on one occasion compelled her to make a trip to the grocery store to correct an alleged 12¢ error. Mrs. Koury testified "I looked forward to a grocery buying expedition in terror . . . it was a nightmare to me,"

and every time she bought groceries the same thing would happen. On any number of occasions Koury threatened to slap her because of some slight error, and stated to her that he wished he had never married her, and complained if her accounts did not balance to the very penny. Although Mrs. Koury knew nothing about using a hammer and nails, he compelled her to nail a strip on a floor and because she did not hit the nail in a proper manner, he threatened to kick her. Koury even tried to supervise the dishwashing and house cleaning. Finally Mrs. Koury became exhausted from nervous tension and had to go to the hospital.

The very nature of the ill treatment inflicted upon Mrs. Koury was such that there could not be much corroboration, and in a case of this kind where there is no collusion her testimony does not need much corroboration. *Coffey* v. *Coffey,* 223 Ark. 607, 267 S. W. 2d 499; *Fitzgerald* v. *Fitzgerald,* 227 Ark. 1063, 303 S. W. 2d 576. However, her testimony is sufficiently corroborated by the testimony of her son, Robert H. Barnes, a medical doctor. He testified he knew of his own knowledge that Koury berated and belittled Mrs. Koury, using profane language; that he was rude to her; that if something wasn't exactly right with the food, Koury would get up and leave the table in an arrogant and rude manner; that he was abusive to Mrs. Koury, using profane language. We agree with the trial court that Mrs. Koury proved her ground for divorce.

The decree provides that Mrs. Koury shall receive her statutory interest of one-third of the property of defendant, including oil produced from defendant's oil wells, together with her statutory interest in all other property of the defendant. This provision of the decree is in accordance with Ark. Stat. § 34-1214. It is estimated that under this provision of the decree Mrs. Koury will receive a monthly income of approximately $1,000, or perhaps more, and she had an income from her own property of something over $100 a month. The trial court allowed her alimony of $200 per month. In view of the income that she receives otherwise, we are of the opinion that the $200 a month alimony should be

disallowed. Appellant contends that the decree is indefinite and unworkable. We do not agree. In fact, the decree appears to be perfectly clear.

Mrs. Koury's attorney was allowed a fee of $500 by the trial court. He has asked for an additional fee in this court. We are of the opinion that Mr. Koury should be required to pay on Mrs. Koury's attorney's fee an additional $500. The decree therefore should be modified by eliminating the $200 per month alimony, and Mrs. Koury is allowed $500 additional attorney's fee. As modified the decree is affirmed.